# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN PURSLEY, KRISTA PURSLEY, and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. CIV-16-14-R ) |
| ED LAKE, in his official capacity as Director of the Oklahoma Department of Human Services, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Plaintiffs filed this action for declaratory and injunctive relief asserting that a policy of the Oklahoma Department of Human Services prohibited foster and adoptive parents, from possession of weapons except under certain circumstances is in violation of the Second Amendment to the United States Constitution. The parties filed motions for summary judgment, Plaintiffs asserting they had established the merits of their claims (Doc. Nos. 27, 28, 33), and Defendant argues Plaintiffs' claims are moot because the policy at issue was rescinded in 2015. (Doc. No. 26). Having considered the parties' filings, the Court finds as follows.

Defendant Lake is the Director of the Department of Human Services, and thus responsible for formulating policies and adopting the rules and regulations for administration of the Department's duties. The Department's responsibilities include administration of the Oklahoma Children's Code and overseeing the placement of children

for foster care and adoption. Plaintiffs Stephen and Krista Pursley have provided care for children via the State's foster care program, have adopted a child through the program, and indicate the desire to provide foster care for additional children in the future. They contend, however, that the Weapon Safety Agreement for Foster and Adoptive Family ("WSA") contained in their 2014 and 2015 re-certification packets violated their rights under the Second Amendment, because it restricted their ability to both possess and use firearms while servings as foster or adoptive parents.[1]

Although Krista and Stephen Pursley apparently disagreed with the contents of the WSA, they signed a version on September 18, 2015. Defendant contends, however, that on

---

[1] The WSA included the following "Statement of Agreement."
> I have been informed of and agree to comply with this weapon safety agreement and acknowledge the requirements of the weapon safety agreement remain in effect while any child in Oklahoma Department of Human Services (DHS) custody is placed in the foster or adoptive family's home.
> Per DHS policy, Oklahoma Administrative Code 340:75-7-18(c)(11), a weapon includes, but is not limited to, a:
>   a. gun;
>   b. BB gun;
>   c. bow and arrow; and
>   d. knife, with the exception of cooking and eating utensils.
> To ensure the safety of a DHS custody child residing in the foster or adoptive family home, the following safety measures for weapons are required:
>   1. Weapons are maintained in locked storage while in the home or when not in use.
>   2. Ammunition is maintained in locked storage separate from weapons while in the home or when not in use.
>   3. Weapons are not carried on a person's body while the child is present unless the foster of adoptive family applicant or parent's employment requires it when on-duty.
>   4. Weapons are unloaded or disabled and stored in a locked container while in an automobile.
>   5. Direct adult supervision is required when the DHS custody child is around a weapon.
>   6. The DHS custody child is not left unsupervised when a weapon is in the presence of or accessible to a child.
>   7. Weapon safety is the responsibility of the foster or adoptive family.
> ***
> The foster or adoptive family applicant or parent acknowledges that on-compliance with weapon safety standards results in an immediate assessment of the home to determine use or continued use of the applicant or parent as a resource.

September 25, 2015, the Department's managers and directors were informed to cease using the WSA. Defendant contends that since that time, the WSA has not been in effect.

Defendant contends that because the WSA is no longer in use that there is no longer a case or controversy, that is that it is moot, thereby depriving this Court of jurisdiction. Defendant further asserts that Plaintiffs lack standing. Finally, Defendant contends he is entitled to judgment as a matter of law for the alleged violation of Plaintiff's federal and state constitutional rights, as well as the contention that the WSA violated the Oklahoma Self-Defense Act, because the Pursleys were free to have chosen not to serve as foster or adoptive parents. In response Plaintiffs contend the dispute is not moot, that they have standing to pursue their claims and that Defendant is not entitled to summary judgment on the merits.

In general, "a federal court cannot give opinions absent a live case or controversy before it," *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1254 (10th Cir. 2001)(citation and quotations omitted). "[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction," *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)(internal quotations omitted)(quoting *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996)). Accordingly, "[m]ootness is a threshold issue." *Id.* With regard to a declaratory judgment and mootness, "[t]he crucial question is whether granting a present determination of the issues offered will have some effect on the real world." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010)(internal quotations and emphasis omitted)(quoting *Wyoming v. U.S. Dept. of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005).

There are exceptions to the doctrine of mootness, specifically, a controversy can be capable of repetition yet evading review, in which case judicial consideration remains appropriate. This exception applies where "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Brown v. Buhman,* 822 F.3d 1151, 1165-66 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 828, 197 L. Ed. 2d 68 (2017). A second exception applies when a defendant voluntarily ceases a challenged action. This exception traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Greater Yellowstone Coal. v. Tidwell*, 572 F.3d 1115, 1121 (10th Cir. 2009) (internal quotation and citations omitted); *Chihuahuan Grasslands All.*, 545 F.3d at 892 ("[T]his exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct.").

In response to the motion, Plaintiffs first assert that because "[t]here is no official ruling or judgment preventing the next OKDHS official from reinstating the WSA . . . this matter is capable of repetition yet evading review." Doc. No. 41, p. 4. Without elaborating on this exception, Plaintiffs proceed to argue this case falls within the voluntary-cessation exception to mootness, because Defendant revoked use of the WSA only after initiation of the instant litigation. The Court assumes Plaintiffs intend only to rely on the voluntary cessation exception to the mootness doctrine given their failure to fully develop the capable of repetition argument. Having considered the contours of the exception, the Court finds

4

that Defendant has successfully met his burden of establishing that the instant controversy is moot.

In order for voluntary actions to moot litigation, two conditions must be satisfied: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County. of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379 (1979). "Voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Rio Grande*, 601 F.3d at 1115-16. (citation omitted). "The party asserting mootness bears the 'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* at 1116 (internal alteration omitted).

Although the burden is described as "heavy," its impact on government actors is often lightened. *See id.* ("*Laidlaw*'s heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case"). Thus, "withdrawal or alteration of administrative policies can moot an attack on those policies." *Id.* at 1117 (alteration and quotations omitted) (*quoting Bahnmiller v. Derwinski*, 923 F.2d 1085, 1089 (4th Cir. 1991)). "And the 'mere possibility' that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy." *Id.* (citation omitted).

As set forth above, *County of Los Angeles* sets forth a two-part test for voluntary cessation. The first factor requires the Court to ascertain whether it can "say with assurance ''that there is no reasonable expectation' that the alleged violation will recur.'" *Rio Grande*,

5

601 F.3d at 1117 (quoting *County of Los Angeles*, 440 U.S. at 631). The declarations of Carlene Harp and Patricia Johnson lead the Court to conclude that there is no reasonable assurance that the Oklahoma DHS will revert to its prior practice of requiring foster and adoptive parents to execute the WSA. Carlene Harp's declaration includes the following:

> I am familiar with the "Weapon Safety Agreement for Foster or Adoptive Family "WSA" that was utilized for a short time period by the Oklahoma Department of Human services. The WSA was provided to foster and adoptive applicants and those being re-certified as such. That WSA is no longer in use and has been revoked.

Doc. No. 26-3. Patricia Johnson's Declaration states:

> On September 25, 2015, Kim Sober (Child Welfare Field Administrator) emailed me and other managers and directors informing us to immediately stop using the WSA and to inform all staff to cease use of the form. . . . The WSA has been revoked and is no longer in use by the Oklahoma Department of Human Services.

Doc. No. 26-4. First, the evidence presented by Defendant is that DHS ceased using the WSA in September 2015, a week after Plaintiff's re-certification packet, which included the WSA. The lawsuit herein was not filed until January 2016, after the decision not to rely on the WSA had been made and communicated to DHS staff members.[2] The fact that the WSA is no longer in effect and has not been replaced by a similar policy leads the Court to conclude that the interim event completely and irrevocably eradicated the effects of the alleged violation. Plaintiffs do not allege that since that time they have been requested to complete a WSA or any similar agreement with DHS in order to maintain their status as foster or adoptive parents.

---

[2] Plaintiffs contend they were unaware of the September 25, 2015 revocation of the WSA requirement. The fact that Plaintiffs were unaware, however, does not control the outcome of the case. There is no evidence to contradict the declarations of Carlene Harp and Patricia Johnson.

6

Plaintiffs argue this case is similar to *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993). The Court disagrees. Therein, the Supreme Court granted certiorari to consider whether the plaintiffs had standing to challenge an ordinance enacted by the City of Jacksonville entitled "Minority Business Enterprise Participation." *Id.* at 658. Twenty-two days after the Supreme Court granted certiorari, the city repealed and replaced the ordinance, and filed a motion to dismiss. The Supreme Court denied the motion and in its merits' decision again rejected the contention of mootness, premised on the contents of the amended ordinance, which in part mimicked the originally challenged provisions.

> There is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so. Nor does it matter that the new ordinance differs in certain respects from the old one. *City of Mesquite* does not stand for the proposition that it is only the possibility that the *same* statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect.

*Id.* at 662. Here, however, the Department of Human Services has not instituted a new, nearly identical but slightly less impacting rule. Rather, the evidence is that DHS no longer uses the WSA and there is no evidence from any official at DHS that the Department intends to impose a similar rule if this litigation is dismissed. *See e.g. City of Mesquite v. Aladdin's Castle, Inc.* 455 U.S. 283, 289 n. 11 (1982)(City announced to the Court its intention to reenact a challenged provision if the case was dismissed as moot); *Brown*, 822 F.3d at 1167 ("Most cases that deny mootness following government officials' voluntary cessation 'rely on clear showings of reluctant submission [by governmental actors] and a desire to return to the old ways.'" (quotations and citations omitted)). "Government 'self-

correction . . . provides a secure foundation for mootness so long as it seems genuine.'" *Id.* at 1167-68 (quotations and citations omitted). The Court finds this case is governed by *Brown* and similar precedent and not the authority upon which Plaintiffs rely and that the intentions of the Defendant as established by discontinuance of the WSA are genuine. As such, the Court concludes this case is moot.

The mootness doctrine ensures that a case or controversy remains at the time the Court renders its decision. "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quotations omitted). Because the Court has determined the case is moot, the dispute is outside its reach. Having concluded there is no case or controversy, the Court need not consider whether Plaintiffs have standing or the merits of their claims. Defendant's Motion For Summary Judgment is GRANTED and the action is hereby DISMISSED AS MOOT. Plaintiffs' Motion for Summary Judgment (Doc. No. 27) is hereby DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 8th day of May 2017.

*[signature]*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE